# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

STEVEN M.,

       Plaintiff,

    v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.

Civil Action No. 1:24-cv-07440

**OPINION**

**APPEARANCES**:

Steven Messina
1320 Sherwood Drive
Vineland, NJ 08360

    *Pro se.*

Andrew C. Lynch
Anne Von Scheven
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Steven M.'s[1] appeal from a denial of Social Security disability benefits by the Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Administrative Law Judge's ("ALJ") decision.

_____

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

I.    **BACKGROUND**

The Court recites herein only those facts necessary for its determination on this Appeal.

A.  **Administrative History**

On December 11, 2018, Plaintiff applied for disability insurance benefits ("DIB"), alleging a disability onset date of February 1, 2007. (AR 26, 161). The Social Security Administration denied his application initially on March 7, 2019, (AR 161–69), and upon reconsideration on June 11, 2019. (AR 170–79). The ALJ held a hearing on May 8, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 55–160). In a decision dated June 13, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26–47). That decision became the final decision of the Acting Commissioner when the Appeals Council declined review on April 26, 2024. (AR 1–6). Plaintiff timely filed this appeal on July 1, 2024, pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

B.  **Plaintiff's Background and Testimony**

At the alleged onset of disability, Plaintiff was forty-two years old. (AR 45, 161). Plaintiff has at least a high school education, (*id*. at 161), and prior to the onset of the disability, Plaintiff worked as welder, (AR 30).

Plaintiff's initial claim on December 11, 2018, cited rhinitis, hypertension, hyperlipidemia, obesity, type-2 diabetes mellitus, hypogonadism, frequent falls, depression, insomnia, and lumbago. (AR 490). At the May 8, 2023 administrative hearing, Plaintiff's attorney noted that he suffered from degenerative joint disease affecting multiple areas of his body, including his lumbar spine, hips, shoulders, and neck, and had also been diagnosed with diabetes mellitus and peripheral neuropathy, all of which contributed to ongoing pain and physical limitations. (AR 64, 65, 66). Plaintiff testified as to having difficulty with standing, walking, lifting, and even sitting for more than a few minutes, stating that he relied on a recliner at home that allowed him to shift position

2

and apply heat or massage to manage his pain. (AR 95–96). He testified that his ability to walk was extremely limited—he needed to lean on things after just a few steps and could only sit or stand comfortably for short periods. (AR 96–98). Plaintiff also stated that he could not lift even a bag of trash without hurting himself, could not play with his children due to pain, and frequently fell due to weakness in his legs. (AR 100–102). He recounted a failed work attempt at Lowe's in 2013, during which he was assigned to the lawn and garden department but was unable to walk long distances, lift mulch, or operate a forklift, and was eventually let go after a few weeks. (AR 68–74). Plaintiff testified that he had not worked since, despite trying, and explained that his daily routine consisted largely of sitting, attempting light household chores, and struggling with depression and a sense of worthlessness. (AR 108–110).

At an earlier November 7, 2022 administrative hearing, Plaintiff testified that he had worked for over fifteen years at NCS doing physically demanding labor and spending most of the day on his feet. (AR 153). He stated that he stopped working in February 2007 because of worsening pain, fatigue, and emotional strain, and described being depressed, frequently in tears, and unsure how to continue supporting his family. (AR 153–154). He testified that at the time he left that employment, he had already begun experiencing significant pain in his back, shoulders, neck, and knees, which progressively worsened. (AR 154). He recounted mental health struggles stemming from his inability to pay bills or access adequate care due to lack of insurance. (AR 154–157). Plaintiff described a decline in function around the time of his alleged disability onset, including weight gain, inability to walk or climb stairs, and the need to move into a downstairs room and use a lift chair for mobility. (AR 150–151).

### C.  Vocational Expert's Testimony

At the May 8, 2023 hearing, a vocational expert, Mary Beth Kopar testified that Plaintiff's past work as a welder involved very heavy exertion and required skills that would not transfer to other work. (AR 117–18). She evaluated various hypothetical individuals based on limitations posed in the record. In one scenario—someone limited to light exertion with occasional postural activities—Kopar identified several unskilled jobs in the national economy, including order caller, marker, and sorter. (AR 120–121). However, in another scenario with greater restrictions, including sedentary work, use of a cane, limited standing and walking, and need to alternate positions or be off task more than fifteen percent of the day, Kopar testified that competitive employment would be precluded. (AR 122–127). She also confirmed that if a person required a cane for balance or could not sit, stand, or walk for a combined total of six hours in a day, they could not sustain full-time work. (AR 125–126). Additionally, Kopar testified that absenteeism of more than one day per month would eliminate all unskilled work. (AR 128).

### D.  Medical History

Between February 1, 2007, and June 30, 2012, Plaintiff received treatment from Cumberland Internal Medicine. (AR 590–634). As reflected in these records, during a routine physical examination on December 19, 2011, Plaintiff did not report any issues with breathing, dizziness, fainting, anxiety, or depression. (AR 601). Clinical findings at that visit noted normal strength, balance, gait and stance, and symmetric deep tendon reflexes. (AR 602). The records also indicate that Plaintiff reported walking one mile each day. (AR 611, 615).

## II.    <u>LEGAL STANDARD</u>

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (internal citations and quotations omitted).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. on behalf of K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [she] can still do despite [her] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

## III.    ALJ DECISION

Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012. (AR 29). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 1, 2007, the alleged disability onset date, and June 30, 2012, the date last insured. (*Id.*).

At Step Two, the ALJ found that Plaintiff suffered from the following medically determinable severe impairments: diabetes mellitus, obesity, degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, and degenerative joint disease of the right shoulder. (*Id.* at 29–30). The ALJ found that Plaintiff's other alleged impairments—including hypertension, hyperlipidemia, rhinitis, asthma, hypogonadism, insomnia, knee degeneration, and mental impairments such as depression and anxiety—did not cause more than minimal limitation in Plaintiff's ability to perform work and therefore, were not severe. (*Id.* at 30–32).

At Step Three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any Listing, including Listings 1.15, 1.16, 1.18, or those relevant to diabetes, obesity, or mental disorders. (*Id*. at 35).

At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work, subject to limitations, including: occasional climbing of ramps and stairs; never climbing ropes, ladders, or scaffolds; avoidance of unprotected heights and dangerous machinery; and occasional balancing, stooping, kneeling, crouching; no crawling. (*Id*. at 37). The ALJ found that this RFC did not permit the performance of Plaintiff's past relevant work as a welder. (*Id*. at 45).

At Step Five, relying on vocational expert testimony, the ALJ found that a significant number of sedentary, unskilled jobs existed in the national economy that Plaintiff could have performed as of the date last insured, including: order clerk (40,000 jobs nationally), document preparer (20,000 jobs), and lens inserter (25,000 jobs). (*Id*. at 46). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time between February 1, 2007, and June 30, 2012. (*Id*. at 47).

## IV.    <u>DISCUSSION</u>

Plaintiff contends that he is disabled due to several severe physical impairments that have rendered him unable to work since 2007. He describes extensive joint deterioration—including an inoperable spine, bilateral shoulder damage, arthritis in many joints, and nerve damage in his right hand—as well as systemic complications such as memory loss, cognitive decline, and immune dysfunction, which he maintains have been confirmed by multiple treating physicians. (Pl.'s Br., ECF No. 8 at 3–4). Plaintiff attributes much of the delay in his disability claim to poor medical management by his initial treating physician, who allegedly failed to perform appropriate

diagnostics or issue timely referrals, and ultimately delayed disability paperwork until it was too late. (Pl.'s Br., ECF No. 8 at 2–3).

Plaintiff also argues that administrative obstacles and misinformation contributed to the denial of his claim. He further maintains that his need for pain medications corroborates the severity of his condition and supports his claim for benefits. (Pl.'s Br., ECF No. 8 at 5).

The Court does not find these arguments persuasive and, for the reasons that follow, affirms the decision of the ALJ.

The ALJ's determination that Plaintiff was not disabled during the relevant period—February 1, 2007 through June 30, 2012—is supported by substantial evidence. Under the deferential standard, an ALJ's factual findings must be upheld if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019),

Here, the ALJ carefully evaluated the medical record and concluded that although Plaintiff had several medically determinable impairments—including diabetes mellitus, obesity, lumbar degenerative disc disease, bilateral carpal tunnel syndrome, and right shoulder degenerative joint disease—those impairments, considered separately or in combination, did not render him unable to perform substantial gainful activity. (AR 29). In doing so, the ALJ relied heavily on contemporaneous treatment notes from Cumberland Internal Medicine, which documented generally unremarkable clinical findings during the relevant period. For example, as noted, at a physical examination on December 19, 2011, Plaintiff displayed normal strength, gait, balance, stance, and reflexes, and did not report symptoms such as dizziness, shortness of breath, or mental health concerns. (AR 601–02). Treatment notes further indicated that Plaintiff reported walking a mile daily, which the ALJ reasonably found inconsistent with his claims. (AR 611, 614).

The ALJ also found no objective evidence during the relevant period of assistive device use, atrophy, edema, abnormal neurological signs, or observable pain behaviors—such as shifting, difficulty sitting, or interruptions due to pain—that might otherwise support the level of impairment alleged. (AR 39–40). Specifically, despite Plaintiff's later testimony about frequent falls and difficulty standing or walking, his outpatient providers recorded no muscle weakness, sensory loss, or use of a cane or walker. Nor did they observe motor abnormalities.

At Step Three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of a Listing. The ALJ correctly found no evidence of, for example, the extreme limitations in ambulation or use of upper extremities required under Listings 1.15, 1.16, or 1.18, and no complications of diabetes that would satisfy the criteria in Sections 2.00, 4.00, 5.00, 6.00, 8.00, 9.00, or 11.00. (AR 35–37).

At Step Four, the ALJ assesses the claimant's RFC and whether he can perform his "past relevant work." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to Step Five.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the ALJ is tasked with determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). In determining an individual's RFC, the ALJ must consider all relevant evidence— including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)).

However, the ALJ need include only "credibly established" limitations. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record;" however, "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason").

Here, the ALJ formulated a detailed RFC limiting Plaintiff to sedentary work with additional restrictions on postural activity, exposure to environmental conditions, and use of the upper extremities. (AR 37). In doing so, the ALJ explicitly considered Plaintiff's subjective complaints and testimony but concluded that his allegations were not entirely consistent with the clinical evidence. To be sure, subjective allegations of pain or symptoms do not alone establish a disability. *See Miller v. Comm'r of Soc. Sec.,* 719 F. App'x 130, 134 (3d Cir. 2017); 20 C.F.R. § 416.929(a)). Rather, objective medical evidence is required to corroborate the subjective complaints of the claimant. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)); *see also Christopher F. v. Kijakazi*, No. 21-516, 2022 WL 9169835, at *8 (D.N.J. Oct. 14, 2022). And here, the ALJ reasonably gave limited weight to opinions rendered several years after the relevant time by treating doctors who did not specify the degree of functional limitation as of or before June 30, 2012. (AR 44–45). To the extent Plaintiff asks this Court to re-weigh the evidence that was fully considered by the ALJ, this Court declines to do so. *See, e.g.*, *Alycea K. v. Kijakazi*, No. 17-02683, 2022 WL 17733663, at *7 (D.N.J. Dec. 16, 2022) ("Plaintiff . . . asks this Court to re-evaluate the weight assigned to evidence that was adequately considered by the ALJ. This Court declines to do so.").

Finally, at Step Five, the ALJ relied on vocational expert testimony to find that Plaintiff could perform several sedentary, unskilled jobs available in significant numbers in the national economy, including order clerk (40,000 jobs), document preparer (20,000 jobs), and lens inserter (25,000 jobs). (AR 46). The vocational expert's testimony provides substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled under the Act.

Accordingly, because the ALJ's findings are supported by substantial evidence and the decision reflects application of the correct legal standards, the Court affirms the decision.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**